IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANGELA J. MOON, ] | |
| ] | |
| Plaintiff, ] | |
| ] | |
| v. ] | CV-07-BE-1103-S |
| ] | |
| CITY OF TARRANT, ] | |
| ] | |
| Defendant. ] | |
| ] | |

### MEMORANDUM OPINION

This case comes before the court on the "Defendant's Motion for Summary Judgment" (doc. 17). The parties have fully briefed the motion for summary judgment. Plaintiff claims that Defendant failed to promote her on the basis of her race, in violation of Title VII and 42 U.S.C. § 1981. For the reasons stated below, the defendants' motion for summary judgment (doc. 17) will be GRANTED. A separate order to that effect will be entered simultaneously.

### FACTS

Plaintiff Angela Moon is an African-American employee of Defendant City of Tarrant. Plaintiff was first hired in 1978 as a dispatcher with the police department. She transferred to the court system as a Court Clerk in 1984. Since transferring, Plaintiff has received one promotion as well as cost of living increases and merit-based raises. Plaintiff was promoted to her current position, Senior Court Clerk, in 1994 or 1995, after the Personnel Board surveyed her position and determined she was working out of class.

The Personnel Board of Jefferson County is a human resources organization established

1

to administer the civil service system in Jefferson County, Alabama. The Personnel Board is responsible for classifying positions, testing potential candidates for employment and promotion, administering pay schedules.  The Classification and Compensation Department of the Personnel Board conducts a survey at least every five years to validate the classification of employees within the civil service system. The survey process involves obtaining information from employees regarding the tasks they perform in the course of their job.  The Personnel Board uses this information to determine whether the employee is classified in the correct position for the work that they do. As part of the 2002-2004 survey, the Personnel Board determined that Moon's classification was appropriate and that a reallocation was not necessary.

Defendant regularly employs two Court Clerks, Plaintiff and Barbara Cushman.  Sherri Stutts is listed on the Defendant's organizational chart as the supervisor of both court clerks. Plaintiff alleges that Cheryl Green supervised them.  Cheryl Green, who had been Plaintiff and Cushman's supervisor, testified that Plaintiff indirectly supervised Cushman, because she had worked as a Court Clerk longer and had more experience than Cushman.  Cushman testified that she and Plaintiff had different duties and that Plaintiff did not oversee her work.  Cushman also sought a promotion about the same time as Plaintiff, and Cushman's request for promotion was also denied.

On June 27, 2005, Plaintiff requested that her position be upgraded to Principal Court Clerk.  The Principal Court Clerk specifications describe the functions of the position as

> directing the clerical and financial record keeping activities of a court . . .
> planning, organizing, coordinating, and supervising the work of clerical and court
> support staff in maintaining court dockets . . . [p]lan[ning] and assign[ing] work
> and review[ing] and evaluat[ing] performance of a unit of subordinates engaged in
> the preparation and maintenance of court records . . . serv[ing] as principal

> assistant to the Judge or Chief Court Clerk . . . perform[ing] legal research . . . order writing . . . [and] check[ing] papers and documents prepared by clerical staff and attorneys for compliance with court rules and governing laws.

(Dft.'s Br. Ex. 1, Tab A). At the time of Plaintiff's request, Defendant had no Principal Court Clerk position.

Plaintiff also tested for the position of Administrative Coordinator and requested to be placed in that position. The Administrative Coordinator specifications describe the functions of the position as

> planning, coordinating, and directing the work of clerical personnel . . . assisting in the development and implementation of departmental policies and procedures and determining the effectiveness of existing programs . . . [having] responsibility for the overall clerical workflow within a large department . . . determining prior of work . . . determin[ing] deadlines and monitor[ing] progress of work . . . plan[ning], assign[ing], and evaluat[ing] the work of a staff of administrative and clerical personnel . . . maintain[ing] records on all tasks associated with the department . . . conduct[ing] research, prepar[ing] briefs, summaries, fact sheets and other data required for program planning . . . [and] assist[ing] with budget preparation.

(Dft.'s Br. Ex 1, Tab G). Plaintiff did not rank within the top ten candidates for the Administrative Coordinator position.[1]

After consulting the 2002-2004 five year survey, which concluded an upgrade for Moon was not warranted, Mayor Tuck decided not to promote Plaintiff to either position. The Personnel Board informed Mayor Tuck that Defendant did not have a Principal Court Clerk position, and Mayor Tuck was not convinced that Defendant needed the position[2] or that Plaintiff

---

[1] Generally, when a position becomes available, Defendant must look at the registry list of people who have tested for that position and consider those who, on the basis of their test scores and experience, rank in the top ten of all potential candidates.

[2] Mayor Tuck is not the final decision maker for creating a new position. If Mayor Tuck believed the City needed a new position, the City Council would have to approve the creation of

performed the duties and responsibilities of the position.  Additionally, Plaintiff did not rank within the top ten candidates for the position of Administrative Coordinator.  Plaintiff also admitted that she does not do all, but maybe half, of the functions of an Administrative Coordinator.  (Dft.'s Br. Ex. 1 at 256-57).

Plaintiff asserts that she is similarly situated to three Caucasian employees whom Mayor Tuck did upgrade: Linda Sharp, Deidre Arnold, and Beverly Self.  Mayor Tuck upgraded Linda Sharp to the Accountant position temporarily until Sharp could have an opportunity to test for the position. Mayor tuck upgraded Linda Sharp, because the Personnel Board determined in the course of conducting the 2002-2004 survey that Sharp was performing the Accountant functions and should be upgraded.  Similarly, Mayor Tuck upgraded Deidre Arnold to the position of Accountant temporarily after the Personnel Board determined in the course of conducting the 2005-2006 survey that Arnold should be upgraded.  After Beverly Self transferred from her job as the Manager of the Fultondale Gas Department, Mayor Tuck requested that she be placed temporarily in the Accountant position, because she had not had an opportunity to test for the position yet.  After testing for the Accountant position, Self was not within the top ten ranks, and Mayor Tuck placed her in the Accounting Assistant II position instead.  Mayor tuck alleges that she followed the Rules and Regulations of the Personnel Board in each of these temporary upgrade decisions, but Plaintiff asserts that Mayor Tuck should have hired from the personnel registry listings.

After being denied a promotion, Plaintiff filed suit in this court alleging that Defendant failed to promote her based on race in violation of Title VII of the Civil Rights Act of 1964 and

---

the new position.

42 U.S.C. § 1981.[3]  Defendant moved for summary judgment, and both parties have fully briefed the motion.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure.  Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-23.  Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats &*

---

[3] Plaintiff has voluntarily dismissed her retaliation claim.

*Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)   In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. app. ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.").  The moving party need not present evidence in a form admissible at trial; "however, he may not merely rest on [the] pleadings." *Celotex*, 477 U.S. at 324.  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50 (citations omitted).

     In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988).  The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v.*

*State Farm Mut. Ins. Co.*, 193 F.3d. 1274, 1282 (11th Cir. 1999).  Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party.  *Graham*, 193 F.3d at 1282.  The non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.*  Instead, the evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255.  After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

## DISCUSSION

Plaintiff asserts that Defendant failed to promote her on the basis of her race.  Specifically, Plaintiff asserts that she requested promotion to two different positions for which she was qualified, but that Defendant denied her requests because she is African-American.  Plaintiff further asserts that she has been treated differently than three Caucasian employees, who allegedly were promoted without being qualified and without following proper protocol.  Defendant asserts that Plaintiff was not promoted because the Personnel Board did not recommend promotion, the Plaintiff was not qualified or performing the job functions of the requested positions, and Defendant found that the requested positions were not necessary.  The parties do not dispute the basic facts; the court, therefore, determines that no genuine issues of material fact remain.  The only remaining inquiry, then, is whether Defendant is entitled to judgment as a matter of law based on those facts.

Claims of race discrimination under § 1981 are analyzed in the same manner as claims brought under Title VII.  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

One way to establish a claim of racial discrimination is through direct evidence. *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997). If the plaintiff cannot prove discrimination by direct evidence, as in this case, the plaintiff must establish her prima facie case through the burden shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Nevertheless, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated . . . remains with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 251-52 (1981).

Under the *McDonnell Douglas* framework, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." 411 U.S. at 802. A plaintiff can establish a prima facie case of racial discrimination based on disparate treatment by showing that she belongs to a racial minority, she experienced an adverse job action, her employer treated similarly situated employees outside her classification more favorably, and she was qualified to do the job. *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003). The parties do not dispute that Plaintiff, as an African-American, belongs to a racial minority and that, by being denied promotions, she has experienced an adverse job action. Defendant disputes that it treated any similarly situated employees outside Plaintiff's classification more favorably and further denies that Plaintiff was qualified to do the jobs requested.

Plaintiff asserts that Defendant promoted three Caucasian women outside the normal hiring procedures and failed to promote her because of her race. Defendant does not deny that three other employees in the accounting department were temporarily promoted and that Plaintiff's requests for promotions were denied. Defendant, however, points to Barbara

Cushman, who is Caucasion and who is the other Court Clerk with whom Plaintiff worked. Because Plaintiff and Cushman held the same position and both requested and were denied promotions at nearly the same time, Defendant argues that Cushman is Plaintiff's only true comparator. Accordingly, because Cushman's requests for promotion were also denied, Defendant argues that Plaintiff cannot establish that she was treated differently than similarly situated employees outside her protected class.

Plaintiff asserts that the three Caucasian women in the accounting department can also be considered her comparators. However, "[t]o make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that [she] and the employees are similarly situated in all relevant respects." *Hollifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). "Indeed, '[t]he comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer.'" *Embry v. Callahan Eye Found. Hosp.*, 147 Fed. Appx. 819, 829, 2005 WL 2009046, at *8 (11th Cir. 2005) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004)). Plaintiff argues that Deidre Arnold, Linda Sharp, and Beverly Self, who were temporarily promoted to the Accountant position by Defendant, are similarly situated employees who were treated differently than she.

This case is factually analogous to a case decided in the Southern District of Florida, in which a plaintiff alleged that he was denied Sundays off because of his race. *St. Hilaire v. The Pep Boys*, 73 F. Supp. 2d 1350, 1362 (S.D. Fla. 1999). In *St. Hilaire*, the court determined that the plaintiff had different duties and worked in a different department than the allegedly similarly situated employee who was treated differently. 73 F. Supp. 2d at 1362. The *St. Hilaire* court also found that, unlike the plaintiff in that case, the allegedly similarly situated employee was not

9

needed to work on Sundays, because other Customer Service department employees were willing to work Sundays. 73 F. Supp. 2d at 1362.  The *St. Hilaire* court ultimately determined that the plaintiff in that case could not establish that he was similarly situated to the Customer Service employee, because they were not similarly situated in all relevant respects.  73 F. Supp. 2d at 1362.

The parties here do not dispute that Plaintiff and the three women in the accounting department had different positions, duties, and job responsibilities.  The parties also do not dispute that the 2002-2004 survey conducted by the Personnel Board recommended that Defendant upgrade the positions of Sharp and Arnold to Accountant,[4] whereas the Personnel Board recommended that Plaintiff <u>not</u> be upgraded.  As in *St. Hilaire*, the Plaintiff here cannot establish that she is similarly situated to the three Caucasian women in the accounting department who were temporarily promoted as a result of the Personnel Board's recommendation that they be upgraded.  Those employees were upgraded to positions that already existed, whereas Plaintiff sought the creation of positions that do not yet exist and that Mayor Tuck has determined are unnecessary.  Furthermore, Barbara Cushman, a Caucasian woman who worked alongside Plaintiff as a Court Clerk and who also sought promotion at the same time, was not promoted.  The most similarly situated employee outside Plaintiff's protected class was treated the same way as Plaintiff.  Plaintiff has a long history working for Defendant, and Defendant had promoted her previously.  Nothing in the record suggests that Defendant treated her differently on the basis of her race.

Accordingly, the court determines that Plaintiff has not carried her burden of establishing

---

[4] Self replaced Sharp after she retired.

a prima facie case, because she cannot establish that similarly situated, non-minority employees were treated more favorably than she was. The Defendant, therefore, is entitled to judgment as a matter of law and summary judgment will be granted in its favor.[5]

## CONCLUSION

For the reasons stated above, the court concludes that it must GRANT the Defendant's motion for summary judgment, because the Plaintiff has not carried her burden under *McDonnell Douglas* to establish a prima facie case of discrimination.

DATED this 27th day of October, 2008.

*Karon O. Bowdre*
_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

---

[5] Alternatively, even if Plaintiff could establish her prima facie case, Defendant has presented valid reasons, which Plaintiff has not shown to be pretextual, for denying Plaintiff's upgrade requests.